People of the State of Illinois ex rel. Edward J. Barrett, Plaintiff, v. Fon Du Lac State Bank, Defendant. Warren Sutliff, Appellant, v. Charles H. Albers, Appellee.

Gen. No. 9,107.

Opinion filed April 20, 1938.

L. E. SUTHERLAND, of Peoria, for appellant.

JOHN E. DOUGHERTY, of Peoria, for appellee Charles H. Albers.

QUINN, QUINN & O'HERN, of Peoria, appellee Federal Deposit Ins. Corp.; JAY J. ALLOY, of Peoria, of counsel.

C. B. ULLRICK, of Peoria, for appellee John Strickfadden.

MR. PRESIDING JUSTICE FULTON delivered the opinion of the court.

On August 12, 1932, the Fon Du Lac State Bank, of East Peoria, Illinois, gave a depository bond to Margaret H. Arnold, township school treasurer of Fon Du Lac Township, Tazewell county, Illinois, upon which the appellant Warren Sutliff and others were sureties. The condition of said bond required the obligor to pay all withdrawals of School District No. 309, Tazewell county, Illinois, deposited in said bank in excess of $45,000. On May 28, 1934, the auditor of public accounts of the State of Illinois took possession of and closed the said bank, and on June 13, 1934, a receiver was appointed. Upon the closing of the Bank there were funds deposited by Margaret H. Arnold, township school treasurer, belonging to said School District No. 309, in said Bank in the sum of $74,778.59. Subsequent to the closing of the Bank, the said town-

ship school treasurer, in behalf of Community High School District No. 309, brought suit in the circuit court of Tazewell county, against Warren Sutliff, the appellant, and the other sureties on said bond to recover the deposits in said Bank in excess of the sum of $45,000, and judgment was entered therein against Warren Sutliff individually in the sum of $29,678.59, and costs of suit. This judgment was afterwards paid by Warren Sutliff, together with interest and costs, in the amount of $30,200.

Margaret H. Arnold filed an intervening petition in the bank liquidation proceedings as such township treasurer, and for the use of said School District No. 309, for the allowance of her claim against the receiver. On September 21, 1936, a decree was entered allowing the claim prayed for in said intervening petition and finding that at the time said bank closed it was indebted to said intervening petitioner in the sum of $74,778.59, and that Warren Sutliff had paid upon said indebtedness the sum of $29,678.59, by virtue of a judgment "on a certain bond executed by the said Sutliff and others for the protection of a portion of said indebtedness, and that said payment by said Sutliff constitutes part payment of said indebtedness." The order further finds that the said petitioner has been paid the sum of $36,768.41, by said receiver. It was further provided in said decree as follows:

"It is further expressly ordered that the allowance of said claim hereinabove made to Intervening Petitioners is made wholly and solely to said Intervening Petitioners and to no other person or persons whatsoever, and that said allowance herein made to Intervening Petitioners shall not prejudice the rights of any other person or persons whatsoever to assert and the Receiver to resist any claim for common dividends over and above the amounts required herein to be paid to the Intervening Petitioners."

Thereafter appellant filed his intervening petition, on which this appeal arises claiming that he is "equitably entitled to . . . all dividends which have been or may hereafter be declared on said claim in excess of the amount heretofore ordered to be paid to Margaret H. Arnold as such Township School Treasurer," by virtue of the fact that he had paid the township treasurer the penalty of the bond. This intervening petition was answered by the appellees denying the right of appellant to subrogation, setting forth among other things that appellant was a party to an intentional violation of the statute, limiting the amount of deposits which could legally be made, and that to invoke the equitable powers of the court in favor of the appellant as requested, would operate to injure the lawful and innocent creditors of the Bank by reducing the fund available for distribution to them. The statute referred to being section 71, ch. 122 [Ill. Rev. Stat. 1937, § 71; Jones Ill. Stats. Ann. 123.074], provides that deposits by a township treasurer of school funds shall not exceed 75 per cent of the capital stock and surplus of the Bank. Upon a hearing the court found the issues against the appellant and dismissed his intervening petition for want of equity. It is from that order that the appellant now seeks a reversal.

The facts above outlined were not in controversy and the sole question in the case is whether or not the appellant Warren Sutliff was entitled to subrogation. He asserts that as a general proposition where a surety pays the debt of his principal he is entitled to be subrogated to all of the rights of the creditor. This principle is well established in the cases cited by the appellant such as *Bartel v. Zimmerman,* 293 Ill. 154. In that case it was held that the surety on a note was entitled to be subrogated to the rights of the payee where he has paid the judgment on the note and taken an assignment thereof to protect himself against levy and sale of his own property, and he may enforce the

judgment against the maker of the note. However, in that case there was no question of the rights of third parties having intervened. In the present case the question is whether or not the appellant, being an active participant in the securing of a deposit liability in excess of the statutory limitation, may now be permitted to assert a claim for subrogation in a court of equity which is superior to the claims of the innocent depositors and creditors of the bank.

Our Supreme Court in defining subrogation has said: ''Subrogation is an equitable right, and not a legal one, and can be enforced only in equity. It will not be enforced when it would be inequitable to do so or where it would work injustice to others having equal equities.'' *Makeel v. Hotchkiss,* 190 Ill. 311. The contention of the appellant that a construction of the statute referred to would distinguish his case from those holding that a surety may not be subrogated to the claim of the State or other public entity when his suretyship obligation results from a violation of statute is not borne out by the decisions of our courts. The case of *Estate of Ramsay v. Whitbeck,* 183 Ill. 550, definitely holds the contrary. In that case Rufus N. Ramsay as State Treasurer of Illinois entered in to an illegal agreement with his sureties to deposit public funds in the banks represented by said sureties upon which interest was to be paid to him. During his term of office Ramsay died leaving a large deficit of public funds on deposit. This deficit was paid by the sureties and they then filed a claim in the county court against the estate of Ramsay and applied to the court to be subrogated to the rights of the State of Illinois and to have the claim allowed as a preferred claim of the sixth class. The fact that the testimony tended to show that the bond was given to induce the treasurer to make deposit in certain banks where there was a separate, illegal undertaking to pay the treasurer interest was the basis for the claim being denied by the court.

In the case of *People v. Peoples State Bank of May-
wood,* 354 Ill. 519, an ordinance of the village of May-
wood prohibited deposits by the village treasurer in
excess of the indemnity which the depository bonds
afforded. An excess deposit was made by the treas-
urer. Such deposit was held unlawful and the court
said, ''The omission to observe a mandatory provision
of a Statute or ordinance renders unlawful the act or
proceeding which it governs or to which it relates.''
In the case of *Western Indemnity Co. v. Crafts,* 240
Fed. 1, the State Treasurer of Ohio had deposited
money with a trust company in violation of the Ohio
statutes. The surety company having paid the State
on the bond sued the defendant officers of the trust
company on their contract to indemnify the surety com-
pany against losses on the bond. The court held
against the contention of the surety company and in
citing the case of the *Estate of Ramsay v. Whitbeck,
supra,* said, ''Thus it is sought to enforce a contract
which was executed and received with the plain intent
and purpose to promote a scheme to divert state
moneys from the State Treasury to the Trust Com-
pany, and while it is true, as counsel insists, that the
statute did not in terms make it a crime to receive and
secure the deposit of State moneys, still the inhibition
of the Statute is broad enough to forbid a scheme look-
ing to such a diversion of State moneys.''

In the present case it is clear that the appellant en-
gaged in and was the moving spirit in an act which was
a clear violation of the statute. The act specifically
fixed a limitation as to deposits of the character in-
volved at 75 per cent of the capital and surplus of the
bank. While it is apparent that this statute was passed
to enable township treasurers to procure bonds it was
also intended as a protective measure for the public.
To confer upon the appellant the right of subrogation
would be to prefer his unlawful act over the rights of
innocent depositors and creditors.

It is our conclusion that under the admitted facts in this case and the decisions of our courts it was proper for the trial court to refuse the equitable right of subrogation to the appellant in this case and the decree of that court is therefore affirmed.

*Affirmed.*